IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GREGORY LUCE and NICHOLAS
NEWMAN,

               Plaintiffs,

v.

TOWN OF CAMPBELL WISCONSIN,

               Defendant.

OPINION AND ORDER

14-cv-46-wmc

      Plaintiffs Gregory Luce and Nicholas Newman brought this suit under 42 U.S.C. § 1983 against the Town of Campbell, challenging the constitutionality of an ordinance prohibiting signs, banners, flags and other similar items on or within 100 feet of a pedestrian bridge or overpass. This court granted summary judgment in favor of defendants, holding that the ordinance was a reasonable time, place and manner restriction on plaintiffs' First Amendment rights. (6/16/15 Op. & Order (dkt #127).) On appeal, the Court of Appeals for the Seventh Circuit affirmed in part and reversed in part: upholding the prohibitions on the bridge itself; vacating this court's judgment with respect to the plaintiff's challenge to the 100-foot buffer zone; and remanding the case for further proceedings as to whether the buffer zone provision is narrowly tailored to serve a significant government interest. *Luce v. Town of Campbell*, 872 F.3d 512 (7th Cir. 2017).

      On remand, both parties moved for summary judgment. (Dkt. ##170, 175.) Defendant argues that the town ordinance is narrowly tailored to promote traffic safety. Plaintiffs argue that: (1) defendant's motion for summary judgment rests on inadmissible declarations; (2) the information asserted in these declarations is contradictory or

unreliable and, therefore, should be given no evidentiary weight; and (3) the city ordinance is not narrowly tailored. For the reasons that follow, the court agrees with plaintiffs that defendant has not met its burden of demonstrating that the 100-foot buffer zone is narrowly tailored to serve a significant government interest. Accordingly, the court will grant plaintiffs' motion for summary judgment and enjoin the enforcement of the buffer zone.

UNDISPUTED FACTS[1]

A. Background

Plaintiffs Gregory Luce and Nicholas Newman are residents of La Crosse County and members of the local Tea Party. They sought to share their political views by demonstrating on a pedestrian bridge spanning interstate I-90 in the Town of Campbell, Wisconsin. In August and September 2013, plaintiffs and their affiliates began placing political signs and banners on the overpass, displaying messages such as "HONK TO IMPEACH OBAMA."

In response, the Town's council enacted an ordinance forbidding all signs, flags and banners on any of the Town's three highway overpasses or within 100 feet of the structures. The ordinance provides in pertinent part:

> No person shall display, place, erect, post, maintain, install, affix, or carry any sign, flags, banners, pennants, streamers, balloons or any other similar item:
>
> (1) *on any portion of a vehicular or pedestrian bridge or overpass that passes over a freeway or expressway* as defined in Wis. Stat. §

---
[1] Unless otherwise noted, the court finds the following facts material and undisputed.

> 346.57, or a controlled access highway as defined in Wis. Stat. § 990.01, when such highway has a speed limit of more than 40 miles per hour, whether the highway is under the jurisdiction of the federal, state or local government, *provided that such sign is visible from such freeway*, expressway or controlled access highway.
>
> (2) *within one hundred (100) feet of any portion of a vehicular or pedestrian bridge or overpass that passes over a freeway or expressway* as defined in Wis. Stat. § 346.57, or a controlled access highway as defined in Wis. Stat. § 990.01, when such highway has speed limit of more than 40 miles per hour, whether the highway is under the jurisdiction of the federal, state or local government, *provided that such sign is visible from such freeway, expressway or controlled access highway.*

(Def.'s PFOFs (dkt. #64) ¶ 113 (emphasis added).) Local law enforcement began issuing citations to protestors who were displaying signs and flying flags on the bridge. The protestors responded by taking video recordings of police officers who were issuing citations and threatening law enforcement.

This court entered summary judgment in favor of defendants, concluding that: (1) the ordinance was content neutral; (2) it was narrowly tailored to serve the significant government interest of traffic safety; and (3) it left open alternative channels of communication. (6/16/15 Op. & Order (dkt. #127)). On appeal, the Seventh Circuit agreed with conclusions (1) and (3), but disagreed in part with conclusion (2) to the extent that this court found the one-hundred foot buffer zone described in 912.2(2) was narrowly tailored to serve a significant government interest. *Luce*, 872 F.3d at 513-14, 516-17. Specifically, while agreeing that traffic safety was a significant government interest, the court expressed concern that the 100-foot buffer zone could have the incidental effect of

3

banning non-dangerous speech on private property.[2]

> The ordinance forbids a small "For Sale" sign on the front lawn of any house near the ends of the overpasses….It bans every political sign on a home's lawn, every balloon emblazoned with "Happy Birthday" for a party in the back yard, every "Merry Christmas" banner draped over the front door in December, and every "Open" sign in the door or any shop near an overpass. These prohibitions apply whether or not the sign is large enough to attract drivers' attention.

*Id.* at 518. Given that the signs within the 100-foot buffer "may be too small to cause drivers to react," even though "visible" within the meaning of the ordinance, the court concluded that absent "some justification for the 100-foot rule," this court "should ensure that political demonstrations and other speech that does not jeopardize safety can proceed." *Id.*

### B. Evidence Specific to 100-foot Buffer Zone Provision

On remand, defendant filed two, additional declarations in support of its renewed motion for summary judgment. Brent P. Smith, who served as outside counsel for the Town of Campbell and assisted in preparing and reviewing the Ordinance, provided the first declaration. (Smith Decl. (dkt. #173).) Smith represents that the 100-foot buffer zone addendum was added "to prevent protestors from skirting the ordinance and standing within close proximity to the overpass to display signs." (*Id.* at ¶ 1.) "If a buffer zone was not added to the Ordinance," Smith further explains, "the concern was that protestors could still cause traffic safety issues in an area where traffic was merging and exiting the

[2] In this case, the evidence indicated that two residential properties in particular fell within the 100-foot buffer zone,

interstate." (*Id.* at ¶ 2.) Current Chief of the Town of Campbell Police Department, Andrew Gavrilos, provided the second declaration. After examining the Bainbridge Street overpass and surrounding properties referenced in the 7th Circuit opinion, Gavrilos determined that "large portions" of the two residential properties falling within the radius of the 100-foot buffer zone were *not* visible from the highway due to foliage and "slightly elevated topography. (Gavarilos Decl. (dkt. #174) ¶¶ 1-2.) As such, these portions of the properties would not fall within the ambit of the statute.

In their own motion for summary judgment, plaintiffs introduced no additional evidence, but rather argued that defendants' declarations were inadmissible, while again arguing that § 912.2(2) was not narrowly tailored.

OPINION

To prevail on a motion for summary judgment, the moving party must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court considers all facts and draws inferences in the light most favorable to the nonmoving party when ruling on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986).

I. **Plaintiff's Motion to Strike Defendant's Declarations**

In their post-remand motions, plaintiffs argue that the inclusion of extra evidence – Smith's and Gavrilos' declarations -- is not permitted because discovery had already been closed. (Pls.' Opp'n (dkt. #182) 5-6.) However, the Seventh Circuit noted the lack of a fully developed record with regard to the 100-foot buffer provision, seemingly inviting

5

exactly the kind of evidence offered by the defendant on remand. *See Luce*, 872 F.3d at 518 ("Perhaps the Town has some justification for the 100-foot rule, but unless it produces one the district court should ensure that political demonstrations and other speech that does not jeopardize safety can proceed."). Not only does the Seventh Circuit's decision to remand for further fact finding imply that both sides would be entitled to submit additional evidence, including declarations, in support of the 100-foot rule on remand, but this court invited supplementation. Moreover, nothing prevented plaintiffs from seeking discovery in response to defendant's declarations. Therefore, plaintiffs' argument regarding the inadmissibility of defendant's supplemental declarations falls flat.

Plaintiffs also argue that information contained in defendant's declarations is inadmissible because it contradicts testimony previously provided in earlier depositions. (Pls.' Opp'n (dkt. #182) 6-8.) Specifically, plaintiffs point to Town Chairperson Scott Johnson's testimony regarding why a 100-foot buffer zone was chosen rather than a smaller area. (*Id*.) Johnson stated that he "would not say that there was anything specific about that hundred feet. And that's typical of an ordinance. We do not break down every single word in it when we describe an ordinance." (Pls.' PFOFs (dkt. #76) ¶ 85 (citing Johnson 30(b)(6) Depo. (dkt. #58) 42).) First, this statement does not conflict with any averments in the Smith and Gavrilos declarations. Neither Smith nor Gavrilos asserted that there was a specific reason why a 100-foot radius was chosen; they only referred to the general need for a buffer zone. Smith's assertion that the buffer zone provision was added to address safety concerns is consistent with Johnson's statement that there was nevertheless "no particular reason" why an *100-foot* buffer was chosen as opposed to some other

6

distance. Second, since any arguable inconsistency is construed against defendant at summary judgment, plaintiffs fail to point out any prejudice to consideration of the additional declarations. Third, plaintiffs were free to seek discovery to explore any inconsistency, if they wished. Having chosen not to do so, they have failed to provide any reason why the court should not consider these declarations with respect to the parties' cross-motions for summary judgment.

**II. Challenge to 100-Foot Buffer Zone Provision**

As the court explained in its prior opinion on the parties' orginal summary judgment motions, a municipality may regulate the time, place, and manner of First Amendment expression, provided that the regulation (1) is content-neutral, (2) is narrowly tailored to serve a significant government interest, and (3) leaves open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). On remand, only the second element remains in issue, and only a portion of that element since traffic safety has been recognized as a significant government interest. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507-08 (1981); *Luce* 872 F.3d at 517. As such, the only question is whether an additional, adoption in the ordinance of the 100-foot buffer zone beyond the overpasses themselves is narrowly tailored to further traffic safety.

Narrow tailoring does not require that an ordinance be the *least* restrictive method for achieving the government's goal. *Weinberg v. City of Chi.*, 310 F.3d 1029, 1038 (7th Cir. 2002). "A regulation is narrowly tailored if it 'promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Weinberg*, 310 F.3d at 1040 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). Moreover, given

that the ordinance is content neutral, empirical support is not required to support the restriction on speech. *See, e.g.*, *Luce*, 872 F.3d at 316; *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 829 (7th Cir. 1999). Nevertheless, the burden remains on the Town to "proffer something showing that the restriction actually serves a government interest, and [the Seventh Circuit] has struck down time, place, and manner restrictions where the government failed to produce 'objective evidence' showing that the restrictions served the interests asserted." *Horina v. City of Granite City, Ill.*, 538 F.3d 624, 633–34 (7th Cir. 2008), *opinion amended on denial of reh'g sub nom. Horina v. City of Granite City, Ill.*, 548 F.3d 1107 (7th Cir. 2008).

Here, defendant puts forth evidence that a buffer zone was added out of concern that protestors could skirt the ordinance by standing "within close proximity to the overpass to display signs" in a manner that would raise the same, legitimate traffic safety concerns giving rise to restrictions on the Town's overpasses. (Smith Decl. (dkt. #173) ¶¶ 1, 2.) Defendant, however, stops short of providing any explanation for a *100-foot* buffer zone. Indeed, as plaintiffs noted, the Town Board Chairperson previously conceded that there was no underlying reason for choosing a 100-foot parameter, rather than a smaller area. While the court credits the Town's concern about signage immediately off of the overpass still causing traffic safety issues, the lack of any objective evidence showing that the full 100-foot buffer zone serves that interest, even after being given an additional opportunity to present it, dooms this provision.

Moreover, as the Seventh Circuit explained in its opinion and order, the buffer zone includes residential property, thus restricting the First Amendment rights of those property

8

owners as well.[3] In response, the Town's current Chief of Police explains that there are large portions of the properties that are not visible from the highway and, therefore, the Ordinance does not impinge upon the owners' rights on those portions of their properties. Nonetheless, plaintiffs have demonstrated that the Ordinance restricts the owner's exercise of their First Amendment rights to place signs or other items on at least portions of their own land further demonstrates that the buffer zone is not narrowly tailored to the government interest in traffic safety. As such, the court will grant plaintiff's motion for summary judgment and enjoin enforcement of subsection (2) of the Town's Ordinance 912.2 as currently adopted.[4]

ORDER

IT IS ORDERED that:

1) Defendant Town of Campbell's motion for summary judgment (dkt. #170) is DENIED.

2) Plaintiffs Gregory Luce and Nicholas Newman's motion for summary judgment (dkt. #175) is GRANTED.

---

[3] As the Seventh Circuit's opinion suggests, plaintiffs appear to have standing to challenge the Ordinance based on a non-party landowner's First Amendment rights. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) ("[T]he Court has altered its traditional rules of standing to permit—in the First Amendment area—attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." (internal citation and quotation marks omitted).

[4] The court expresses no opinion as to the constitutionality of a more narrowly tailored buffer zone based on objective evidence as to the necessary distance to avoid the risk of driver distraction and accommodating the rights of private property owners.

3) Plaintiffs' motion to strike declarations and proposed findings of fact (dkt. #177) is DENIED.

4) Defendant is permanently ENJOINED from enforcing the Town of Campell, Wisconsin, Ordinance 912.2(2).

5) The clerk is DIRECTED to enter judgment in favor of plaintiffs enjoining the enforcement of the buffer zone and close this case.

Entered this 29th day of March, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge